UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                                      Case Number: 18-13398-7

    MICHAEL HARVEY,

        Debtor.

---

DAVID GARNETT,

        Plaintiff,

    v.                                                Adversary Number: 19-02

MICHAEL HARVEY,

        Defendant.

---

## **DECISION**

Michael Harvey ("Harvey") filed a voluntary Chapter 7 petition. David Garnett ("Garnett") filed an adversary proceeding objecting to discharge under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), and (a)(6).

Meanwhile, the United States Trustee ("UST") filed its own adversary proceeding seeking denial of Harvey's discharge ("UST Adversary"). Following a three-day trial, the Court entered an Order and Judgment on September 10, 2019—denying Harvey a discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(5).

Garnett now seeks summary judgment on his claims. Harvey opposes summary judgment.

## BACKGROUND

Harvey was a licensed Master Electrician and the owner of Able Energy Corp. ("Able"). He operated as an installer of residential and commercial solar energy systems through Able. Under Able, Harvey contracted for more than eighty projects with various Minnesota consumers for sale of solar systems and collected advanced payments without performance or return of the money. Harvey also contracted for projects with Wisconsin consumers. Harvey controlled the Able bank accounts and testified during the UST Adversary that he received advanced payments for Able projects without rendering performance.

In March 2018, the Minnesota Department of Labor and Industry ("MNDLI") issued a licensing order to Harvey and Able seeking to revoke their licenses and impose civil penalties based on a "variety of misconduct," including providing false and misleading information to consumers. Three months later, MNDLI filed a civil lawsuit against Able and Harvey in a Minnesota state court seeking restitution and injunctive relief. The result was a judgment for MNDLI and an order for a Restitution Judgment of $1,560,311.12 against Able and Harvey for their collective indiscretions. This Court took judicial notice of the MNDLI lawsuit and the Restitution Judgment during the UST Adversary.

Garnett is a Wisconsin resident and was not a party to the MNDLI state lawsuit in Minnesota. He contracted with Able to install solar panels for his residence in Eau Claire, Wisconsin. The contract amount totaled $12,151.16.

2

The contract did not provide a start or end date for the project. Able's local sales manager, Shawn Ward, signed the contract.

Garnett made a down payment of $7,200 by three separate checks between November 14 and December 26, 2016. Even so, Able failed to install the solar panels as promised. Garnett did not receive a refund.

Garnett requests summary judgment against Harvey because of his failures to honor Able's contract terms and to refund the down payment. Garnett also bases his claims on misrepresentations, fraud, and willful and malicious injury by Harvey.

Harvey counters that he is not a party to the claims asserted by Garnett. Harvey says that all agreements were merely between Able and Garnett. According to Harvey, the fault, if any, is that of Able.

### DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. BANKR. P. 7056 adopting FED. R. CIV. P. 56(a). At the summary judgment stage, the Court's role is to determine whether there is a genuine issue for trial. The Court need not weigh the evidence to determine the truth. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The moving party "always bears the initial responsibility" to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the nonmovant must establish specific facts that show a genuine issue for trial. *See id.* at 587. The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The Court cannot consider facts that are not in the record. *Summit Credit Union v. Goldbeck* (*In re Goldbeck*), 590 B.R. 881, 887 (Bankr. W.D. Wis. 2018). However, it is well settled that federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979)). *See also Green v. Warden, United States Penitentiary,* 699 F.2d 364, 369 (7th Cir. 1983); *Barrett v. Baylor,* 457 F.2d 119, 124 n.2 (7th Cir. 1972).

Furthermore, a court may take judicial notice of its "own records of prior litigation closely related to the case before it." *St. Louis Baptist Temple,* 605 F.2d at 1172.

Garnett has submitted evidence in the form of an affidavit, filed exhibits showing proof of payments, and a contract attached to the adversary complaint. By contrast, Harvey's only submission is an affidavit arguing the contract was between Garnett and Able. Harvey argues the funds were in Able's control and not his. He does not dispute there was a contract or that Garnett

4

paid $7,200 for work that was never done. And it is undisputed no money was refunded to Garnett.

For summary judgment determinations, the materiality of facts must be determined with reference to the governing substantive law. *Anderson,* 477 U.S. at 248. This adversary complaint ("Complaint") objects to discharge of the debt owed by Harvey under sections 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6).

The exceptions to discharge under 11 U.S.C. § 523 are strictly construed against objecting creditors and liberally in favor of debtors. *See In re Crosswhite,* 148 F.3d 879, 881 (7th Cir. 1998). The party objecting to discharge must prove each element of the discharge exceptions by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

A. <u>Nondischargeability under 11 U.S.C. § 523(a)(2)(A)</u>

Under 11 U.S.C. § 523(a)(2)(A), a discharge in bankruptcy does not exempt a debtor from a debt arising from false pretenses, a false representation, or actual fraud.

A finding of nondischargeability for "false pretenses" or a "false representation" requires the creditor to establish that the debtor made a knowingly "false representation of fact . . . with an intent to deceive" and "upon which the creditor justifiably relied." *Zamora v. Jacobs (In re Jacobs)*, 448 B.R. 453, 471 (Bankr. N.D. Ill. 2011). For purposes of the "false pretenses" and "false representation" prongs, "intent to deceive is measured by the debtor's subjective intention at the time the representation was made." *Id.* at 472.

Reliance must be "justifiable." *Field v. Mans,* 516 U.S. 59, 73-75 (1995). Justifiable reliance is subjective and what is justifiable depends on the characteristics and circumstances of a particular case. *Id.* at 71. The justifiable reliance requirement does not impose an affirmative duty on creditors to investigate, unless "the falsity of the representation is easily detectable." *Bombardier Capital, Inc. v. Dobek (In re Dobek),* 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002). Creditors cannot ignore obvious falsehoods. *Jacobs,* 448 B.R. at 472.

Unlike false pretenses and false representation, "actual fraud" does not require a misrepresentation or reliance. *See McClellan v. Cantrell,* 217 F.3d 890, 892-93 (7th Cir. 2000). Actual fraud encompasses varied circumstances and consists of "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another[.]" *Id.* at 893. To establish a claim based on "actual fraud," a creditor "must prove that: (1) actual fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the debtor's actual fraud created the debt at issue." *Jacobs,* 448 B.R. at 472.

As a result, scienter is a required element of all three prongs under section 523(a)(2)(A). *Id.* The required mental state must be present when a representation is made or at the time of a purportedly fraudulent act. *Id.* Thus, subsequent representations or acts fail to establish that the debtor had the requisite intent at the time the representation was made or the act was carried out. *Id.* However, "courts may consider subsequent conduct to the extent that such conduct provides an indication of the debtor's state of mind at the time of

6

the actionable representations or acts." *Id.* (citing *6050 Grant, LLC v. Hanson (In re Hanson),* 437 B.R. 322, 327-28 (Bankr. N.D. Ill. 2010)).

Circumstantial evidence may be used to establish scienter. *Rezin v. Barr (In re Barr),* 194 B.R. 1009, 1020 (Bankr. N.D. Ill. 1996). Thus, "where the debtor knowingly or recklessly made false representations that he knew or should have known would induce another to act, the court can infer an intent to deceive." *Jacobs,* 448 B.R. at 472. Actual fraud may be inferred "if the totality of the circumstances suggests that the debtor intended to cheat or otherwise deceive the creditor." *Id.*

The Complaint alleges that Harvey solicited business, made promises and representations of his ability to fulfill the terms of the Able contract, and demanded advanced payments with the full knowledge of his financial difficulties and inability to install the solar panels. The Complaint further alleges that through Able, Harvey accepted advanced payments with the intent to defraud Garnett of his money.

 1. *False Pretenses and Representation Under 11 U.S.C. § 523(a)(2)(A)*

For the "false pretenses" and "false representation" prongs, the Court must determine whether there is a genuine dispute that, through Able, Harvey knowingly made a false representation that solar panels would be installed. The Court must also determine whether the representation was made with the intent to deceive, and that Garnett justifiably relied on such representation when signing the contract and making the $7,200 down payment.

7

The findings of the Minnesota state court and this Court's familiarity with Harvey through the UST Adversary establish a pattern of unethical business practices by Harvey and Able. During the UST Adversary, this Court found that Harvey was the substantial majority owner of Able and controlled the Able bank accounts. It is undisputed that through Able, Harvey routinely collected advanced payments for various installation projects without performance or refunds. Harvey testified as such during the UST Adversary. There is no genuine dispute that Garnett experienced the same ordeal as many other consumers in Minnesota and Wisconsin.

The contract between Able and Garnett promises installation of solar panels. It states that the project will enter Able's job queue once advanced payments are received. It is reasonable that Garnett justifiably relied on the installation of solar panels pursuant to the contract. It is also reasonable that he justifiably relied on the project entering Able's job queue after he made the $7,200 down payment.

While Garnett did not have an affirmative duty to investigate the health of Able's business operations, the "justifiable reliance" element does not allow creditors to ignore obvious falsehoods. There is no indication Garnett was aware of Able's financial or legal troubles at the time of entering into the contract. The MNDLI state lawsuit was not filed until almost a year and a half after he signed the contract with Able. All elements under the "false pretenses" or "false representation" prongs are satisfied.

*2. Actual Fraud Prong Under 11 U.S.C. § 523(a)(2)(A)*

For the "actual fraud" prong, the Court must determine whether there is a genuine dispute: (1) that Harvey intended to defraud Garnett; (2) that actual fraud took place; and (3) the debt at issue was created because of the actual fraud. This prong does not require a misrepresentation or reliance. The Court can and does infer that actual fraud took place because the totality of the circumstances indicates that Harvey intended to cheat or otherwise deceive Garnett.

Harvey's answer to the Complaint does not admit, deny, or state that he lacks knowledge or information sufficient to form a belief as to the truth that Able failed to install solar panels pursuant to the contract. Harvey ignores the allegation altogether. With respect to the allegation that Able failed to refund the $7,200 down payment, Harvey's answer merely states that the "documents speak for themselves."

Rule 8(b) of the Federal Rules of Civil Procedure provides that in response to a pleading, "a party must admit or deny the allegations asserted against it by an opposing party." FED. R. CIV. P. 8(b)(1)(B). The rule further requires parties lacking knowledge or information sufficient to form a belief about the truth of an allegation to state as such. FED. R. CIV. P. 8(b)(5). Thus, there are "only three possible responses to a complaint: (1) outright admission; (2) outright denial; or (3) a disclaimer statement in compliance with Rule 8(b)'s provision for lack of knowledge or information as the basis for a deemed denial." *Thompson v. Ret. Plan for Employees of S.C. Johnson & Sons, Inc.,* Nos.

9

07-CV-1047, 08-CV-0245, 2008 U.S. Dist. LEXIS 105477, 2008 WL 5377712, at *1 (E.D. Wis. Dec. 22, 2008).

It is well-established that a party's response that "documents speak for themselves" is "insufficient and contrary to the Federal Rules of Civil Procedure." *Do It Best Corp. v. Heinen Hardware, LLC,* 2013 U.S. Dist. LEXIS 94567, No. 1:13-CV-69, 2013 WL 3421924, at *5 (N.D. Ind. July 8, 2013). *See also State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. 2001) (providing that a party may not respond to complaint allegations about contents of documents by saying that the "document speaks for itself"); *Thompson*, 2008 WL 5377712, at *4 (striking certain responses to a complaint as being impermissible pleadings under Rule 8).

A party's response that fails to properly deny allegations in a complaint may be stricken and the referenced allegations may be regarded as admitted. *See, e.g., Rudzinski v. Metro. Life Ins. Co.*, No. 05 C 0474, 2007 U.S. Dist. LEXIS 75668, 2007 WL 2973830, at *4 (N.D. Ill. Oct. 4, 2007). While some courts hold that upon striking a party's answer, the referenced allegations are deemed admitted, other courts allow for the filing of an amended answer to cure any impermissible pleadings. *See, e.g., Clarendon Am. Ins. Co. v. All Bros. Painting, Inc.,* No. 13-CV-0934, 2013 U.S. Dist. LEXIS 157668, 2013 WL 5921538, at *4 (M.D. Fla. Nov. 4, 2013); *Thompson*, 2008 WL 5377712, at *4.

Considering that Harvey's answer was filed more than a year ago on February 4, 2019, it would not be appropriate to allow Harvey to amend his answer. Too much time has elapsed, and it would not be equitable to Garnett if

Harvey could amend his answer at this point. Thus, the Court finds the failures of Harvey's answer to deny allegations in the Complaint that Able failed to render performance pursuant to the contract, and that Garnett never received a refund, as admitting such allegations.

The Court must now review Harvey's affidavit opposing summary judgment. Harvey's affidavit does not deny that Able failed to execute the terms of the contract, or that the down payment was never refunded despite the lack of performance. Rather, Harvey simply brushes off any personal liability because the contract does not bear his name or signature. In other words, Harvey argues he was not a party to the contract because it was formed between Able and Garnett. This argument carries no weight because Harvey controlled Able and its accounts. Also, he set the contract terms. Further, he was a licensed contractor with a level of sophistication and testified to receiving advanced payments through Able during the UST Adversary. Harvey also conceded that he did not have the solar panels needed to fulfill contracts. Nonetheless, the down payments were spent rather than refunded.

The Honorable Richard H. Kyle presided over the MNDLI state lawsuit proceedings. His conclusions are illustrative of Harvey's acts:

> Restitution shall be joint and several against Defendants. As Able's founder, owner, registered agent, president, and chief executive officer, Harvey participated in, directed, or authorized Able's unlawful acts, or at the very least was negligent in failing to learn about and prevent them in the small business he solely owned and operated . . . . Harvey should bear personal liability because he directed corporate policies and activities and his actions or inactions facilitated Able's violations.

District Court Order Granting Summary Judgment at 16-17.[1]

Considering Judge Kyle's findings and conclusions, along with judicial notice of this Court's findings in the UST Adversary, there is no doubt that Harvey intended to defraud Garnett, that actual fraud took place, and the debt at issue was created because of the actual fraud. All elements under the "actual fraud" prong of section 523(a)(2)(A) are met.

The signed contract, the copies of the down payment checks, and Garnett's pleadings are sufficient to prove each element of the discharge exception under section 523(a)(2)(A)—by a preponderance of the evidence. Thus, the Court determines there is no genuine dispute as to any material fact that the debt owed to Garnett is excepted from discharge under section 523(a)(2)(A). Garnett is entitled to summary judgment for $7,200.

B. Nondischargeability under 11 U.S.C. § 523(a)(6)

Section 523(a)(6) provides that a debt is nondischargeable if it was incurred through willful and malicious injury by the debtor. To show willful and malicious injury, Garnett must show that: (1) Harvey acted willfully, (2) Harvey acted maliciously, and (3) Harvey's willful and malicious actions caused injury to Garnett or his property. *See Owens v. Powell* (*In re Powell*), 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017). Willfulness and maliciousness are separate elements that must be independently proven. *Id.*

---

[1] The Minnesota State Court opinion was accessed through the UST's filed exhibits in the UST Adversary (Case no. 19-23).

An act is willful "when an actor had actual intent to cause injury or 'was substantially certain that the injury would occur.'" *Powell*, 567 B.R. at 434 (quoting *Margulies v. Hough (In re Margulies)*, 541 B.R. 156, 162 (Bankr. S.D.N.Y. 2015)). To meet the standard for willfulness, Garnett must show "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (emphasis in original).

Maliciousness has generally been held to encompass "implied or constructive malice as well as actual malice." *In re McGuffey*, 145 B.R. 582, 586 (Bankr. N.D. Ill. 1992). Implied malice may be shown "by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 88 (2d Cir. 1996); *see also Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989) ("Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice.").

The Seventh Circuit Court of Appeals has defined willful and malicious injury as one that "the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012).

It cannot be disputed that the solicitation of a down payment was a willful act, as the Able contract contains language that prevents the start of any installations before such payments are received. The fourth paragraph on page seven of the contract states that the installations shall commence based

on Able's job queue and that "[t]he customer enters the job queue upon Able Energy receiving the initial payment." Harvey does not deny receiving the down payment or failing to provide a refund. Thus, there is an undisputed injury to Garnett in the amount of $7,200. The only remaining issue is whether Harvey acted maliciously when he caused Garnett's monetary injury.

The Court is aware of Harvey's practice of soliciting advanced payments without performance. The Court also knows about the financial troubles faced by Harvey's business entities leading up to the MNDLI state lawsuit. The Court previously made findings about Harvey's actions in the UST Adversary. Thus, it is reasonable for the Court to infer that, through Able, Harvey solicited the $7,200 down payment while knowing it was highly likely to result in an injury to Garnett. In other words, Harvey knew that Able would be unable to complete Garnett's solar installation when the down payments were made and accepted.

The signed contract, the copies of the down payment checks, and Garnett's pleadings are sufficient to prove each element of the discharge exception under section 523(a)(6)—by a preponderance of the evidence. The Court finds there is no genuine dispute as to any material fact that the debt owed to Garnett is excepted from discharge under section 523(a)(6). Garnett is entitled to summary judgment for $7,200.

C. Nondischargeability under 11 U.S.C. § 523(a)(2)(B)

Section 523(a)(2)(B) excepts from discharge debts for obtaining money, property, or services through the use of a written statement. A creditor must prove, by a preponderance of the evidence, that the debt was obtained by the

use of a statement: (1) in writing; (2) that is materially false; (3) respecting the debtor's or an insider's financial condition; (4) on which the creditor to whom the debtor is liable . . . reasonably relied; and (5) that the debtor caused to be made or published with the intent to deceive. *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1114 (3d Cir. 1995).

Here, Garnett asserts the promises made through the Able contract were materially false, misleading, and made with the intent to deceive. The Court must determine whether a contract for services, such as installing solar panels, qualifies as a written statement under section 523(a)(2)(B). The Court must focus on the third element and determine whether the language in Able's contract constitutes a written statement respecting Harvey's financial condition.

The Supreme Court has held that a statement "respecting" a debtor's financial condition must simply have "a direct relation to or impact on the debtor's overall financial status." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1761 (2018). While *Appling* prevents strict interpretations that limit an actionable statement of financial condition to financial-type statements, such as balance sheets or income statements, there is still a requirement for the written statement to relate to the debtor's overall financial status.

Finding that a sales contract qualifies as a written statement respecting a debtor's financial condition would be problematic. Doing so would mean that "almost all debts resulting from the failure to comply with a contract would be

sufficient to establish nondischargeability." *Law Offices of William C. Courtney, LLC v. Williams* (*In re Williams*), No. 15-33283, 2018 Bankr. LEXIS 3246, 2018 WL 6132308, at *6 (Bankr. D.N.J., Oct. 12, 2018) (discussing the relationship between failed contracts and nondischargeability). This is not the intended result of nondischargeability actions under section 523(a)(2)(B).

While the Able contract promises specific performance of installing solar panels, it does not provide a direct relation to or effect on Harvey's overall financial status. The signed contract between Garnett and Able does not meet the third element of section 523(a)(2)(B) as a written statement respecting Harvey's financial condition. The Court denies summary judgment under this cause of action.

## Conclusion

For these reasons, the Motion for Summary Judgment is granted. The debt owed to Garnett in the amount of $7,200 is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6).

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: March 13, 2020

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge